FILED
 2015 Jan-12 PM 12:40
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LASANDRA SIMPSON**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **2:14-cv-00946-AKK** |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner Social Security** ) | |
| **Administration**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Lasandra Simpson brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the adverse decision of the Administrative Law Judge ("ALJ"), which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons stated below, because substantial evidence supports the ALJ's decision and the ALJ's failure to apply proper legal standards was harmless error, the Commissioner's decision is affirmed.

## I. Procedural History

Simpson protectively filed her applications for disability insurance benefits, (R. 110–13), and Title XVI Supplemental Security Income, (R. 114–23), on June 17, 2011, (R. 110, 114), alleging a disability onset date of June 4, 2011, *id.*, due to lupus, (R. 142). After the SSA denied her applications on October 4, 2011, (R. 64, 65), Simpson requested a hearing, (R. 75–76). At the time of the hearing on October 10, 2012, Simpson was forty-five years old, (R. 33), had completed one year of college, (R. 142), and had past relevant semi-skilled light and medium work as a pharmacy technician and past relevant semi-skilled medium work as a house parent,[1] (R. 58). Simpson has not engaged in substantial gainful activity since June 4, 2011, her alleged onset date. (R. 16).

The ALJ denied Simpson's claim on November 14, 2012, (R. 11–28), which became the final decision of the Commissioner when the Appeals Council refused to grant review on March 20, 2014, (R. 1–5). Simpson then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

---

[1] As a house parent, Simpson managed a residential transitional home. Doc. 11 at 2.

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Simpson had not engaged in substantial gainful activity since her alleged onset date, and therefore met Step One. (R. 16). Next, the ALJ acknowledged that Simpson's severe impairments of systemic lupus erythematosus, obesity, hypertension, generalized anxiety disorder, pain disorder, and adjustment disorder met Step Two. *Id*. Additionally, at this stage, the ALJ indicated that Simpson suffered from the nonsevere impairments of gastroesophageal reflux disease and degenerative disk disease of the lumbar spine and that Simpson's fibromyalgia was not a medically determined impairment, per SSR 12-2p. (R. 18). The ALJ then proceeded to the next step and found that Simpson did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id*. Although the

ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Simpson:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with abilities, limitations, and restrictions to include the following: occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes and scaffolds; frequently bilaterally handle and finger; no more than occasional exposure to extreme cold, extreme heat, wetness, and humidity; no exposure to hazardous, moving machinery and unprotected heights; can understand, remember and carry out simple instruction for 2-hour periods and with normal breaks to complete an 8-hour day; occasional changes in the work setting that are gradually introduced and well explained; and occasional interaction with the public and coworkers with no tandem tasks.

(R. 19–20). Lastly, in Step Five, the ALJ considered Simpson's age, education, work experience, and RFC, and determined, based on the Medical Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, section 201.28 and on the testimony of a vocational expert ("VE"), that "there are jobs that exist in significant numbers in the national economy that [Simpson] can perform." (R. 22). Because the ALJ answered Step Five in the negative, he determined that Simpson was not disabled. (R. 22).

**V. Analysis**

Simpson contends her claim is due to be reversed or remanded because the ALJ failed to consider the opinion and treatment records of Dr. John D. Morgan,

Simpson's treating physician, and because the ALJ improperly evaluated Simpson's fibromyalgia. The court will examine each contention in turn.

### A. The ALJ's failure to consider the opinion and treatment records of Dr. Morgan was harmless error.

The record contains treatment records prepared by Dr. Morgan, who treated Simpson for lupus from July 21, 2008 until February 4, 2009. (R. 221–57). Dr. Morgan's records include a form dated December 7, 2008 on which he indicated that Simpson was unable to perform the duties of her occupation as a pharmacy technician and, moreover, was unable "to perform any type of work." (R. 232). The ALJ's opinion contains no mention of either Dr. Morgan's records or his opinion that Simpson was unable to work, and Simpson contends these omissions are reversible error. However, as to Dr. Morgan's records, *"*a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient [to establish disability]; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 113 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005). Consequently, the crucial question here is whether the ALJ erred by failing

to acknowledge Dr. Morgan's December 7, 2008 opinion that Simpson is unable to work.

In this circuit, the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Broughton v. Heckles*, 776 F.2d 960, 961–62 (11th Cir. 1985)). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *MacGregor*, 786 F.2d at 1053. Moreover, while "[a] doctor's opinion on dispositive issues reserved to the Commissioner, such as whether the claimant is disabled or unable to work, is excluded from the definition of a medical opinion and is not given special weight, even if it is offered by a treating source, . . . the ALJ should still consider the opinion.[2]" *Lawton v. Comm'r of Soc. Sec.*, 431 F.

---

[2] The regulations similarly make it clear that while an ALJ is not required to afford any special weight to a treating physician's opinion on an issue reserved to the commissioner, he may not dismiss the opinion outright.

> [O]pinions from any medical source on issues reserved to the Commissioner *must never be ignored.* The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, *including opinions from medical sources about issues reserved to the Commissioner.* If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

SSR 96-5p (emphasis added). Moreover, as to opinions from medical sources stating that an

App'x 830, 834 (11th Cir. 2011) (citing 20 C.F.R. § 404.1527(e)). In sum, while the ALJ was free to assign no weight to Dr. Morgan's opinion, he erred by ignoring it outright.

However, two aspects of Dr. Morgan's opinion convince the court that by ignoring it, the ALJ committed harmless error. "[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Mills v. Astrue*, 226 F. App'x 926, 931 (11th Cir. 2007) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). First, Dr. Morgan's opinion, which was dated December 7, 2008, (R. 232), predates Simpson's onset date by two-and-a-half years, (R. 110). "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008). Although the Eleventh Circuit has not taken up the issue, the majority of the courts in this circuit are in agreement.[3] This, however, alone, is not

---

applicant for benefits is unable to work, SSR 96-5p states that:

> Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. *Such opinions on these issues must not be disregarded*. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

*Id.* (emphasis added).

[3] *See Millionder v. Colvin*, No. 3:13-cv-323, 2014 WL 4792602, at *11 (N.D. Fla. Sept. 25, 2014) ("[R]ecords from 2001 to 2004 are too remote to be relevant to the issue of whether

grounds for finding that the ALJ's error was harmless. While the ALJ was free to afford no weight to Dr. Morgan's opinion on temporal grounds, he also could have found the opinion of the doctor who diagnosed Morgan with lupus persuasive. Consequently, the court "cannot say the error was harmless [on these grounds] without re-weighing the evidence. To do so would call for conjecture that invades the province of the ALJ." *Mills*, 226 F. App'x at 931. (citing *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005)).

More dispositively, the ALJ's failure to consider Dr. Morgan's opinion was harmless error because Dr. Morgan's opinion is blatantly contradicted by the record. Dr. Morgan's opinion that Simpson was unable to work was dated December 7, 2008. (R. 232). The undisputed evidence indicates that Simpson

---

Plaintiff became disabled in 2008."); *Potter v. Colvin*, No. 8:12-cv-1031-T-17TGW, 2013 WL 1347282, at *3 (M.D. Fla. Feb. 28, 2013) ("Dr. Thomas last examined the plaintiff on November 22, 2005, nearly three years prior to the plaintiff's alleged onset date. Thus, Dr. Thomas's treatment notes are too remote to be relevant to the issue of whether the plaintiff was disabled on, or after, November 1, 2008."); *Beasterfeld v. Astrue*, at *7 (M.D. Fla. June 2, 2011) ("Given that Dr. Raub's opinion predated Plaintiff's alleged onset date by more than four years, the opinion was of 'limited relevance.'"); *Calhoun v. Astrue*, No. CA 09-0417-CG-C, 2010 WL 1267436, at *4 (S.D. Ala. Mar. 12, 2010) ("[T]he ALJ's sole reliance on an RFC assessment predating the amended disability onset date cannot supply substantial evidence of RFC during the relevant period . . . because such evidence is of limited relevance."). *But see Vanick v. Astrue*, No. 5:11-cv-184/RH/EMT, 2012 WL 3668043, at *10 (N.D. Fla. July 23, 2012) ("While it is true that in some cases records that predate the disability onset date are not relevant to the ALJ's analysis, in other cases such records might be."); *Hamlin v. Astrue*, No. 3:07-cv-507-J-TEM, 2008 WL 4371326, at * 4 (M.D. Fla. Sept. 19, 2008) ("Dr. Tan's medical evidence is dated prior to the alleged onset of disability. While such evidence may be of little relevance, the Court notes it still is of relevance.").

continued to work until 2011. *See* (R. 54 (Simpson's testimony that she worked for several years after her 2008 lupus diagnosis); 129 (tax records indicating that Simpson earned $20,322.22 in 2009, $3,694.83 in 2010, and $3,946.89 in 2011)). Although the ALJ should have discounted Dr. Morgan's opinion on these grounds, the court will not place an undue amount of weight on a technicality by remanding this matter on the grounds that the ALJ erred by failing to articulate a reason for discounting an opinion that, itself, would have been an erroneous basis for a finding of disability. Consequently, the ALJ's failure to consider Dr. Morgan's opinion was harmless error, and not grounds for remand.

### B. The ALJ properly considered Simpson's fibromyalgia.

Simpson contends that the ALJ failed to properly consider her fibromyalgia, Doc. 10 at 8–11, which, as stated above, the ALJ found was not a medically determinable impairment. First, Simpson contends that the ALJ should have classified Simpson's fibromyalgia as a severe impairment. *Id*. at 10. In support of this contention, Simpson notes that:

> [R]ecords from Cooper Green Mercy Hospital in July of 2011 document diffuse pain and fatigue with arm pain and weakness. [Simpson] rated her pain as an 8 on a 10-point pain scale, suggesting severe pain. [Simpson] had been on Plaquenil for two month but had noticed no improvements, and was actually feeling worse. Records document that, contrary to the ALJ's conclusion, [Simpson] did undergo diagnostic testing and received a positive ANA result, demonstrating a confirmed diagnosis of fibromyalgia.

*Id.* (citing (R. 371)). Simpson fails to acknowledge, however, that the ALJ found Simpson's fibromyalgia to be a non-medically-determinable impairment pursuant to SSR 12-2p: Evaluation of Fibromyalgia. (R. 18). For fibromyalgia to be a medically determinable impairment, a claimant must submit evidence indicating either: 1) a history of widespread pain; 2) at least 11 positive tender points on physical examination; and 3) "that other disorders that could cause the symptoms or signs were excluded"; or 1) a history of widespread pain; 2) "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions"; and 3) "that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." SSR 12-2p. After reviewing the record, the court agrees with the ALJ's findings. In particular, there is no evidence that Simpson ever underwent a tender point examination, and no evidence that a medical provider had distinguished her alleged fibromyalgia symptoms from those of her medically-documented lupus. The ALJ's conclusion that Simpson's fibromyalgia was not a medically determinable impairment, per SSR 12-2p, is supported by substantial evidence.

Simpson next contends that "even if the ALJ found [Simpson's] fibromyalgia to be a non-severe impairment, he was still required to consider this impairment and its impact upon other severe impairments." Doc. 10 at 11. The

ALJ, however, did not find that Simpson's fibromyalgia was a non-severe impairment. He found it was not a medically determinable impairment. (R. 18). Consequently, he was not required to consider it beyond Step Two. *See* 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by . . . statement[s] of symptoms.").

## VI. Conclusion

Based on the foregoing, the court finds that the ALJ's conclusion that Simpson is not disabled was supported by substantial evidence, and any application of incorrect legal standards resulted in harmless error. Therefore, the Commissioner's final decision is affirmed. A separate order in accordance with this memorandum of decision will be entered.

Done this 12th day of January, 2015.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE